IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

HECTOR L. HUERTAS,

              Plaintiff,

    v.

CITY OF CAMDEN, <u>et</u> <u>al</u>.,

              Defendants.

HON. JEROME B. SIMANDLE

Civil Action
No. 05-5375 (JBS)

**<u>OPINION</u>**

APPEARANCES:

Hector L. Huertas, <u>pro</u> <u>se</u>
P.O. Box 448
Camden, NJ 08101


Felix P. Gonzalez
Office of the Camden City Attorney
City Hall - 4th Floor – Suite 419
520 Market Street
P.O. Box 95120
Camden, NJ 08101-5120
    Attorney for Defendants


**SIMANDLE**, District Judge:

    Plaintiff, a resident of the City of Camden, brought this
action against the City of Camden and certain African American
Camden public officials, claiming that they intentionally
discriminated against Hispanic voters by campaigning for,
enacting, and enforcing a majority-vote/run-off requirement for
the election of the Camden Mayor and Camden City Council Members,
in violation of the Voting Rights Act, 42 U.S.C. § 1983, 42
U.S.C. § 1988, and the First, Thirteenth, Fourteenth and

Fifteenth Amendments to the U.S. Constitution.  Plaintiff claims that Defendants intentionally implemented the majority vote requirement to dilute the voting power of the Hispanic minority and ensure that African American candidates dominate Camden elections.  Prior to the majority requirement, he claims, Hispanic candidates could and did win office when competing against African American candidates.  Now, he claims, a city-wide election in which a Hispanic candidate wins a plurality leads to a run-off with an African American candidate, who wins the majority of the vote and the elected office when other African American candidates throw their support to that candidate.  This, he claims, was Defendants' intent in supporting this change in election law.

Plaintiff also claims that the City of Camden is unlawfully planning to destroy the homes of Hispanic residents in the Cramer Hill section of Camden, which might dilute their voting strength, he claims, if they are displaced from the city and become ineligible to vote here.  Plaintiff claims this might happen if the city raises the tax levy on that land and fails to relocate the low-income Hispanic residents currently residing there.  He does not claim that he is one of those residents.

This matter is before the Court on Plaintiff's motions to amend the complaint and Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief

2

can be granted.  Because the proposed amendments to the complaint would be futile, the Court will deny Plaintiff's motions to amend the complaint.  The Court will dismiss all allegations related to Plaintiff's challenge to the Cramer Hill development because Plaintiff lacks standing to raise them under Article III of the Constitution.  The Court will also deny, in part, Defendants' motion to dismiss, however, as Defendants have not addressed the substance of Plaintiff's claims regarding constitutional and statutory violations in the majority-vote requirement.

## I.  BACKGROUND

Plaintiff filed a complaint [Docket Item 1] and an amended complaint [Docket Item 4] as of right, alleging generally that (1) African American public officials in Camden intentionally discriminated against Hispanic voters in Camden by campaigning for, enacting, and implementing a law requiring run-off elections when candidates for city-wide elected office receive less than a majority of the vote and (2) African American public officials in Camden are attempting to destroy the homes of Hispanic voters to diminish their voting power in the city and prevent the election of Hispanic candidates.

Defendants filed a motion to dismiss the complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6) [Docket Item 9], claiming that Plaintiff alleged no official act for which they could be liable and that he lacked standing to

complain of either the run-off requirement or the redevelopment plan.

Subsequently, Plaintiff attempted to amend the complaint three additional times.  [Docket Items 13, 17 and 26].  (Each motion to amend will be described and addressed below.) Defendants opposed each of those motions.  Thus, currently pending before the Court are three motions to amend Plaintiff's complaint, Defendants' motion to dismiss the complaint [Docket Item 9], and Defendants' renewed motions to dismiss [Docket Items 25 and 27], filed in opposition to the proposed amendments.

## II.   MOTIONS TO AMEND THE COMPLAINT

Under Rule 15(a), a motion to amend the complaint is permitted "by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).  "Nevertheless, a trial court may consider whether the amendment would be futile," Walton v. Mental Health Ass'n of Southeastern Pennsylvania, 168 F.3d 661, 665 (3d Cir. 1999), and a court may refuse to permit amendment if the amendment would not prevent dismissal.

> Under Federal Rule of Civil Procedure 15(a),
> leave to amend shall be freely given, in the
> absence of circumstances such as undue delay,
> bad faith or dilatory motive, undue prejudice
> to the opposing party or futility of
> amendment. Foman v. Davis, 371 U.S. 178, 182,
> 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).
> Amendment of the complaint is futile if the
> amendment will not cure the deficiency in the
> original complaint or if the amended

4

> complaint cannot withstand a renewed motion
> to dismiss. Massarsky v. General Motors
> Corp., 706 F.2d 111, 125 (3d Cir.), cert.
> denied, 464 U.S. 937, 104 S.Ct. 348, 78
> L.Ed.2d 314 (1983).

Jablonski v. Pan American World Airways, Inc., 863 F.2d 289, 292
(3d Cir. 1988).

Plaintiff filed three motions to amend the complaint. The
first and third motions pertain to a proposed redevelopment of
the Cramer Hill section of Camden. The second motion sought to
add a request for a hearing before a three-judge panel. The
Court shall deny both sets of proposed amendments.

**A. Cramer Hill Claims**

The Court shall deny Plaintiff's first and third motions to
amend the complaint [Docket Items 13 and 26], which relate to an
alleged planned demolition of Hispanic voters' homes in the
Cramer Hill section of Camden. As explained below, those
proposed amendments are futile because Plaintiff does not allege
facts sufficient to grant this Court Article III jurisdiction to
hear the claims; even a liberal construction of the complaint
provides no allegation of an injury in fact to this Plaintiff.
Thus, there is no case or controversy for this Court to decide.

In his first motion to amend the complaint, Plaintiff seeks
to add Defendants Melvin "Randy" Primas, Chief Operating Officer
of the City of Camden; the State Economic Recovery Board for
Camden; Arjit De; the Camden Redevelopment Agency; Camden City

5

Council; and the State of New Jersey.  In his third motion to amend the complaint, Plaintiff seeks to add as defendants several private entities, Hillier and Michaels Development Company, River Hayes Urban Renewal Associates I and River Hayes Urban Renewal Associates II, "as state actors and co-conspirators."  Both sets of proposed defendants are allegedly involved in a planned urban renewal project that would require taking, by eminent domain, the homes of a significant number of Hispanic voters.  Plaintiff claims that the City of Camden has delegated its eminent domain powers to the proposed private defendants, who intend to destroy the homes of low-income Hispanic voters in the Cramer Hill section of Camden in order to build a golf course and new, more expensive homes.  Plaintiff claims that there is no authority for the use of eminent domain power to destroy the existing Cramer Hill homes, that to do so might displace low-income Hispanic residents and dilute the Hispanic vote in the City of Camden, and that the proposed development is a pretext for disenfranchising Hispanic voters.  Plaintiff claims that these intended acts violate the Equal Protection Clause, Section 1 of the Fifteenth Amendment, and the Voting Rights Act.  Plaintiff also requests "preclearance" of all the development plans of the proposed private defendants as well as of the majority-vote requirement.

Although Plaintiff has described the possible detrimental effects of the proposed redevelopment project, a fair reading of

his complaint does not permit the Court to find that there is an actual or imminent injury to Plaintiff that would provide this Court with authority to hear his challenge to the plan.  It is fundamental that a plaintiff must have standing to bring a case in federal court under Article III of the Constitution, the requirements of which were recently discussed by the Court of Appeals in <u>Taliaferro</u>:

> Article III of the Constitution restricts the "judicial power" of the United States to the resolution of cases and controversies. Subsumed within this restriction is the requirement that a litigant have standing to challenge the action sought to be adjudicated in the lawsuit. Standing has constitutional and prudential components, both of which must be satisfied before a litigant may seek redress in the federal courts. <u>Id.</u>; <u>Wheeler v. Travelers Ins. Co.</u>, 22 F.3d 534, 537 (3d Cir.1994). Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed. <u>Storino v. Borough of Point Pleasant Beach</u>, 322 F.3d 293, 296 (3d Cir. 2003).
>
> The three elements necessary to satisfy the irreducible constitutional minimum of standing are:
> (1) the plaintiff must have suffered an injury in fact - an invasion of a legally protected interest [that] is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;
> (2) there must be a causal connection between the injury and the conduct complained of; and
> (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

<u>Taliaferro v. Darby Twp. Zoning Bd.</u>, 458 F.3d 181, 188 (3d Cir.

7

2006) (citations omitted).

        With regard to the Cramer Hill redevelopment, Plaintiff does
not allege an injury in fact that is actual or imminent.  Rather,
he claims that the proposed defendants "want to build 6,000 new
homes and a golf course," that such development might dislocate
the current Hispanic residents, that the City might not relocate
such residents, and that, therefore, the Hispanic vote might be
diluted.  These injuries are conjectural and cannot support an
action against the private or public entities allegedly involved
in the redevelopment plan.  There is no claim of an actual or
imminent harm to Plaintiff that would provide this Court with
authority under Article III to decide the legality of the
proposed redevelopment.  Therefore, the Court must decline
jurisdiction over challenges to the plan and deny as futile
Plaintiff's first [Docket Item 13] and third [Docket Item 26]
motions to amend the complaint.

        Even if those harms were imminent, still there would be no
injury in fact because there is no allegation of any invasion of
a legally protected interest that is concrete and particularized
to Plaintiff.  See Taliaferro, 458 F.3d at 188 (setting forth
this requirement).  Plaintiff makes no allegation that he is a
resident or owner of any of the homes that could be affected by
the planned redevelopment.  Cf. Society Hill Towers Ass'n v.
Rendell, 210 F.3d 168, 176 (3d Cir. 2000) (finding that residents

8

of neighborhood had standing to challenge building project
because they claimed sufficiently concrete and particularized
injury by alleging project would increase traffic, noise, and
pollution where they live).  Rather, his claim is only a
generalized grievance and does not provide this Court with a case
or controversy to resolve under Article III.

> [A] plaintiff raising only a generally
> available grievance about government –
> claiming only harm to his and every citizen's
> interest in proper application of the
> Constitution and laws, and seeking relief
> that no more directly and tangibly benefits
> him than it does the public at large –  does
> not state an Article III case or controversy.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 573-74 (1992).

Because the Court has no power under Article III to hear
Plaintiff's challenges to the planned redevelopment of Cramer
Hill, adding those claims would be futile and the Court must deny
the relevant motions to amend.  [Docket Items 13 and 26].[1]  For
the same reasons, the Court must grant Defendants' motion to
dismiss the complaint [Docket Item 9], in part, with regard to
Plaintiff's claims about Cramer Hill.  The accompanying Order
will be entered dismissing all Plaintiff's claims about the
proposed development in Cramer Hill for lack of standing.

---

[1]  Additionally, the Court notes that any complaint about
the redevelopment of Cramer Hill may be moot, as New Jersey
Superior Court Judge Michael Kassel ruled in January 2006 that
Defendants could not proceed with the proposed redevelopment and
court records indicate the City has abandoned its appeal of that
decision.

**B.  Request for Three-Judge Panel**

The Court shall also deny Plaintiff's second motion to amend the complaint to add a request for a three-judge panel to determine this matter [Docket Item 17], because such amendment would be futile.  No law permits a three-judge panel to hear this case.  Plaintiff erroneously averred that the Voting Rights Act and 42 U.S.C. § 2284(a) entitle him to a hearing before a three-judge panel.  42 U.S.C. § 2284(a) provides, in relevant part:

> (a) A district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body.

As this is not an action challenging the constitutionality of the apportionment of congressional districts, nor one challenging the apportionment of any **statewide legislative** body, Plaintiff has no right to a three-judge panel unless "otherwise required by Act of Congress."  Plaintiff claims that the Voting Rights Act is that Act.  However, Plaintiff misunderstands the law.  42 U.S.C. § 1971(g) is the provision of the Voting Rights Act that pertains to three-judge panels:

> In any proceeding **instituted by the United States** in any district court of the United States under this section in which the Attorney General requests a finding of a pattern or practice of discrimination pursuant to subsection (e) of this section **the Attorney General,** at the time he files

10

the complaint, **or any defendant** in the
proceeding, within twenty days after service
upon him of the complaint, **may** file with the
clerk of such court a **request that a court of
three judges be convened to hear and
determine the entire case.**

(emphases added).  Under the Voting Rights Act, only the Attorney
General or a defendant may request a three-judge panel in certain
actions brought by the United States.  Thus, Plaintiff's motion
to amend the complaint to add such a request [Docket Item 17] is
futile and is denied.

**III.  MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

That leaves only Defendants' motion to dismiss the
complaint.  [Docket Item 9].[2]  Under Rule 12(b)(6), the Court
must deny a motion to dismiss for failure to state a claim upon
which relief may be granted "unless it appears beyond doubt that
the plaintiff can prove no set of facts in support of his claim
[that] would entitle him to relief."  Scheuer v. Rhodes, 416 U.S.
232, 236 (1974).  A District Court must accept any and all
reasonable inferences derived from those facts, Unger v. Nat'l
Residents Corp. v. Exxon Co., U.S.A., 761 F. Supp. 254, 260
(D.N.J. 1991), and must view all allegations in the complaint in
the light most favorable to the plaintiff, Scheuer, 416 U.S. at
236; Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250,

---

[2]  Defendants' renewed motions to dismiss [Docket Items 25
and 27], which sought to oppose Plaintiff's proposed amendments,
are dismissed as moot because the Court has denied Plaintiff's
motions to amend the complaint.

11

1261 (3d Cir. 1994).  It is not necessary for Plaintiff to plead evidence or to plead the facts that serve as the basis for the claims.  See Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977); In re Midlantic Corp. Shareholder Litig., 758 F. Supp. 226, 230 (D.N.J. 1990).  The question before the Court is not whether a plaintiff will ultimately prevail; rather, it is whether the plaintiff can prove any set of facts in support of his claims that would entitle him to relief.  See Hison v. King & Spalding, 467 U.S. 69, 73 (1984).  Therefore, in deciding a motion to dismiss, a court should look to the face of the complaint and decide whether, taking all of the allegations of fact as true and construing them in a light most favorable to the nonmovant, Plaintiff's allegations state a legal claim. Markowitz v. Ne. Land Co., 906 F.2d 100, 103 (3d Cir. 1990). Only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint are taken into consideration.  Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).

As noted above, the Court will grant this motion as to the portion of Plaintiff's complaint pertaining to the proposed redevelopment of the Cramer Hill section of Camden.  Although "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice [to confer standing, because] on a motion to dismiss we 'presume that

12

general allegations embrace those specific facts that are
necessary to support the claim,'" <u>Lujan</u>, 504 U.S. at 561
(quoting <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 889
(1990)), here Plaintiff has failed to make any allegation,
general or specific, that redevelopment of Cramer Hill would
injure him.  The Court has no power to hear Plaintiff's
generalized grievances about the proposed redevelopment of Cramer
Hill, an area in which he is not a resident and which state court
records indicate the City no longer plans to develop in
accordance with the proposal that Plaintiff criticizes.
Therefore, the Court must grant the motion to dismiss, in part,
and excise from this action Plaintiff's challenges to the Cramer
Hill redevelopment.

However, the Court will deny the motion to dismiss with
regard to the remainder of Plaintiff's complaint, which
challenges the majority-vote requirement.  Defendants attempt to
dismiss these claims on two grounds.  First, Defendants assert
that the majority-vote requirement and run-off provision of local
ordinances are lawful and insulated from review because they were
enacted pursuant to a public referendum, provided for by a New
Jersey statute.  This argument fails to account for the supremacy
of the U.S. Constitution and misundertands the thrust of
Plaintiff's claim.

> An impermissible practice can not be
> transformed into a constitutionally

13

>acceptable one by putting a democratic
>process to an improper use.  There should be
>no question "that the electorate as a whole,
>whether by referendum or otherwise, could not
>order [governmental] action violative of the
>[Constitution], and the [government] may not
>avoid the strictures of [the Constitution] by
>deferring to the wishes or objections of some
>fraction of the body politic."

American Civil Liberties Union of New Jersey v. Black Horse Pike
Regional Bd. of Educ., 84 F.3d 1471, 1477-78 (3d Cir.
1996)(quoting City of Cleburne v. Cleburne Living Center, 473
U.S. 432, 448 (1985))(alteration in original).  See also Maese v.
Snowden, 148 N.J. Super. 7, 11-12, 371 A.2d 802, 804 (App. Div.
1977) ("[T]he Faulkner Act does not imbue initiative-proposed
ordinances with any qualities different from other ordinances.")
A policy that violates the Constitution is unlawful,
notwithstanding that it may promote the will of the majority and
be consistent with State law.  Therefore, the Court rejects this
first attack on the complaint until the constitutionality of the
majority run-off provision is tested.

Second, Defendants appear to argue that Plaintiff has no
basis for a claim under 42 U.S.C. § 1983 because there is no
allegation that Defendants were acting "under color of law."
Section 1983 provides, in relevant part:

>Every person who, under color of any statute,
>ordinance, regulation, custom, or usage, of
>any State or Territory or the District of
>Columbia, subjects, or causes to be
>subjected, any citizen of the United States
>or other person within the jurisdiction

14

> thereof to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law, suit in
> equity, or other proper proceeding for
> redress, except that in any action brought
> against a judicial officer for an act or
> omission taken in such officer's judicial
> capacity, injunctive relief shall not be
> granted unless a declaratory decree was
> violated or declaratory relief was
> unavailable.

Thus, to state a prima facie claim, Plaintiff must allege (1) a violation of a federal right (2) by someone acting under color of law.  Groman v. Manalapan, 47 F.3d 628 (3d Cir. 1995).

> This statute, enacted to aid in "'the
> preservation of human liberty and human
> rights,'" Owen v. City of Independence, 445
> U.S. 622, 636, 100 S.Ct. 1398, 1408, 63
> L.Ed.2d 673 (1980), quoting Cong.Globe, 42d
> Cong., 1st Sess., App. 68 (1871) (Rep.
> Shellabarger), reflects a congressional
> judgment that a "damages remedy against the
> offending party is a vital component of any
> scheme for vindicating cherished
> constitutional guarantees," 445 U.S., at 651,
> 100 S.Ct., at 1415.  As remedial legislation,
> § 1983 is to be construed generously to
> further its primary purpose.

Gomez v. Toledo, 446 U.S. 635, 638-39 (1980).

Plaintiff claims, among other things, that he has a cause of action under § 1983 because Defendants' actions deprived him of Equal Protection under the Fourteenth Amendment and the right to vote under the Fifteenth Amendment.  Plaintiff also alleges that Defendants were government officials implementing official policy when they caused these deprivations.  Defendants claim that there

15

is no cause of action because none of the conduct Plaintiff complained of was an "official act" by any of the Defendants.

The Court rejects Defendants' argument.  A liberal construction of the complaint compels the Court to find that Plaintiff has alleged Defendants were acting under color of law when they infringed his federal statutory and constitutional rights to vote.  See Monell v. Dep't of Soc. Svcs., 436 U.S. 658 (1978)(recognizing that municipalities and municipal officials are "person[s]" within meaning of 42 U.S.C. § 1983).  As explained above, the fact that the run-off law was enacted pursuant to a referendum does not insulate it from this Court's review.

The Defendants' dismissal motion does not otherwise discuss the constitutionality of the referendum's provision as measured by the First, Thirteenth, Fourteenth, or Fifteenth Amendments, or under 42 U.S.C. §§ 1971 and 1973, and this Court does not address those claims at this time.  Therefore, the Court will deny, in part, Defendants' motion to dismiss the complaint [Docket Item 9] without prejudice and will not dismiss Plaintiff's challenges to the voting law until Defendants suitably brief the issues in the context of a renewed Rule 12(b)(6) motion or summary judgment motion.[3]

---

[3]  As Defendants have not raised any claim for immunity, this opinion does not address whether immunity bars this action or limits available relief.  Nor does the Court express any

16

## IV.  __CONCLUSION__

Thus clarified, the complaint stands as an allegation that Defendants, the City of Camden; Luis Pastoriza, the Clerk of Camden; Mayor Gwendolyn Faison; Frank Fulbrook, Member of Camden Democratic Committee; Camden City Councilman Ali Sloan-El; Cyrus P. Saxon, Grants Supervising Administrative Analyst; and Deborah Polk, intentionally diluted the voting strength of Hispanic voters in Camden by promoting, enacting, and/or enforcing the majority vote requirement in violation of 42 U.S.C. §§ 1971, 1973, 1983, and 1988, as well as the First, Thirteenth, Fourteenth, and Fifteenth Amendments to the U.S. Constitution. For the foregoing reasons, the Court will deny Plaintiff's motions to amend the complaint [Docket Items 13, 17 and 26][4] and grant in part (with respect to Cramer Hill claims) and deny in part (without prejudiced to a renewed motion addressing the legal sufficiency of Plaintiff's attack on the majority-vote requirement) Defendants' motion to dismiss the complaint for failure to state a claim [Docket Item 9].

---

opinion on the legal sufficiency of Plaintiff's claims, except to discuss the issues brought before it by Defendants in their motion to dismiss, standing and whether Plaintiff has alleged that Defendants were acting "under color of law."

[4] Given Plaintiff's repeated failed attempts to amend the complaint, it is doubtful whether a subsequent motion to amend could be successful under the standards set forth in Foman v. Davis, 371 U.S. 178, 182 (1962).  However, Plaintiff should amend the complaint to clarify whether he is registered to vote in Camden.

17

The accompanying Order will be entered.


September 22, 2006              **s/ Jerome B. Simandle**
Date                                    JEROME B. SIMANDLE
                               United States District Judge